Here the final case on the calendar, Awulye. May it please the court. My name is Nicholas Pinto. I represent Prince Awulye, the defendant, appellant in this matter. Your Honor, this case arises out of a conspiracy to distribute and possess heroin. Our first point that we argued is sufficiency of the evidence on count two. That count charges a conspiracy from January 2012 through July of 2012. For a conspiracy, this court is well aware that it requires two culpable co-conspirators or actors. It can't be a government informant and it can't be established by presence at the scene or knowledge that a crime is being committed. It requires purposeful behavior aimed at furthering the goals of the conspiracy. Oh, here you've got Awulye and, I know I'm mispronouncing it, Byamogesha. I just call her Julian, Your Honor. Julia? Okay. It makes it a lot easier. That's confusing. Awulye and Julia. Thank you for that. Participated in phone calls and in-person meetings. Mr. Omoa, right? The cooperating witness, yes. Yeah. And she testified, and Julian testified, that she willingly agreed, did she not, to transport drugs from Newark Airport? Your Honor, it's my view that she was, she had agreed to, she was introduced to David Omoa as someone who could become a courier somewhere in the future. He told her he had nothing for her. On this particular trip to Newark Airport, he told her, why don't you go with Awulye, take a ride with him, and it's almost like training. She didn't have any real purpose there. She didn't have any real function there. She was just there, she was just, she was literally along for the ride. Your point to all of this is? Is that she... How does that defeat the argument, or how does that help your argument that Awulye did not know what he was doing working with others? Well, Your Honor, there needs to be two culpable actors here, and the first one is David Omoa, who is a government informant, and he cannot be, he can't be a member of a conspiracy. The law says, right, our decision in Desimone says that the requirement is that she engage in purposeful behavior aimed at furthering the goals of the conspiracy. So here, you've got participation in the phone calls, and an in-person meeting, together with travel to and from the Newark airport, where she thought that they were picking up, what they were picking up was contained drugs. Why doesn't that all constitute the purposeful behavior that Desimone talks about? Your Honor, I don't think that there was ever a meeting of the minds with her and Awulye, because he, the agreement she had was with David Omoa, and it really wasn't even an agreement. It was an agreement, sort of, to become a courier somewhere in the future. In fact, she, at some later point, stops responding to Omoa, and never gets back to him, and never does any other work with him. Your Honor, it's our view that she really was just there as an observer. She didn't agree to do anything at that point. Isn't that a matter to be considered by the jury, and let the chips fall where the jury puts them? Your Honor, that is a fair point. I don't, and I understand that we're not here to second-guess the jury's determination in terms of the facts. You're not arguing with the jury charge here, are you? No, no, Judge, no. I think legally, as a legal point, she was really not, she did not perform a function, and her behavior did not arise to the level required for purposeful behavior that would further the conspiracy. She really served no purpose there. In terms of her agreement with David Omoa, it was more an agreement to do something somewhere in the future, and her purpose there for that day was just to be along for a ride. I have a couple of other issues. Also, I asked this Court to treat them like buyer and seller. Now, they're almost as if they're separate contractors. This is not one overarching conspiracy. They're separate actors. And the fact that she's there along for the ride doesn't mean that they're part of the same transaction and part of the same overall conspiracy. It's as if they were just different, that she was there to learn how to do this for some unspecified time in the future. Isn't it kind of like advanced planning to deal in wholesale quantities of drugs? I read that in the government's brief, Your Honor. As did I. Your Honor, I can understand how that could be a view. However, I don't think that it's necessarily advanced planning. I think that it's just something that she was instructed to do for somewhere down the future, and it was conditional, and it was not a done deal. There was no literal meeting of the minds. It was just something that could happen or could materialize somewhere in the future, and it didn't. Now, is there anything in the – your client submitted a pro se supplemental brief. Is there anything in that brief that you want to say anything about? No, Your Honor. Those were his points. Those were his arguments. On the procedural reasonableness question, the government says that that argument is – because, as I understand it, of your client's participation in the proffer session, where he admitted to the quantity of drugs that is now challenging. Why isn't that correct? Your Honor, I understand that, and that question is problematic for us. The whole safety valve proffer came up in, I guess, not in the ordinary manner. Safety valves are usually done with pleas before the sentencing. He was already – he had already – the defendant had appeared at sentencing after a trial before the court, and the court said, well, I don't have to go – Judge Sullivan said, we don't have to go through with the sentencing just yet. How about we let him go and do a safety valve? But prior to that point, the court had already ruled on the weight. The court had already adopted the probation department's view of the weight. We are not asking the court – we're not second-guessing a factual situation. We're asking the court, this court, to view the defendant, the weight that the defendant is responsible for, only in terms of what he agreed to, as opposed to what was involved in this overall conspiracy. And that's what Judge Sullivan had already ruled on. Theoretically, one can be involved in a conspiracy that involves 50 kilograms, but only personally agree to three. The issue – the problem we have – In terms of a conspiracy, having an idea that drugs were being transacted, I think our case law is pretty clear that once you're in that deep, you pretty much take your chances on the quantity that the other co-conspirators are moving around. I understand, Your Honor, and I – So just so I'm clear, as I understand the record, please correct me if I'm wrong, Judge Sullivan did give your client the safety valve, right? Yes, he did, Judge. He got points off of – He did, Judge. There was no mandatory minimum here. Normally the safety valve comes in where there's a mandatory minimum. Well, see, Judge, the issue becomes more – the issue of the weight becomes more relevant if this court reverses on count two, because the weight really essentially revolves around three hypothetical kilograms of heroin that was supposed to be transported from California. David Amoah, the co-operator, asked the defendant, can you go take a ride out to California and bring back three kilos of heroin? And the defendant said, I can't do that. I can't take ten days to do it. I can't do that. It's not something I can do. Months later, he said, I have a small delivery for you to pick up from the airport. It's not going to be that much, but can you pick it up? And that's the one that he agreed to do. So he was saddled with the three kilograms. Probation and the judge had already ruled that that's what he was responsible for. So if count two is reversed, then that becomes relevant conduct, and then the issue becomes a little more murky. And also, Your Honor, the whole scenario is relevant on where within the guidelines to sentence the defendant while the law says that he is responsible for the weight. The court can certainly consider that this was something that was never even agreed to and something that never happened, and he, in fact, only agreed to do something that was much less at a much later date. Thank you. Thank you. May it please the court, my name is Brendan Quigley, and I'm an assistant United States attorney in the Southern District of New York. I represent the government on this appeal, and I represented the government in the proceedings below. Prince Oulay was convicted after a fair trial, of which the evidence overwhelmingly established that he participated in two conspiracies to distribute and possess with intent to distribute heroin. I realize that the jury has spoken, but could you just explain to me how what Julian did was suggestive of purposeful behavior in furtherance of the conspiracy? Sure, Your Honor. I think there are a number of examples of that, but the clearest is the trip to Newark Airport, where she agreed with Oulay to go up there, and she testified on page 329 of the transcript. She actually drove the car from Harrisburg, Pennsylvania area, up to New York with a stop off at Newark Airport to bring what she and Mr. Oulay thought was a suitcase containing heroin from Newark to the Bronx. How did it come about that she was put in that position in the first, or got into that position in the first instance? Was that in any way a suggestion from either an agent or one of our heroes who was cooperating? Your Honor, I think with respect to that day specifically, it is true that Mr. Oulay, who at that time was a cooperating witness, suggested that she go with Mr. Oulay up to New York. That being said, Mr. Oulay initially introduced her and recruited her to Mr. Oulay as a potential heroin courier, and this was a trip in furtherance of that agreement. Would you still have a conspiracy if she hadn't gone? Yes, Your Honor, I think there would be, because in addition, I think that is the strongest evidence of the conspiracy, but there was evidence... If you want to marshal some of that evidence, just remind me of it. Sure, Your Honor. She said that she was approached initially by Mr. Oulay in Pennsylvania, where they lived, and he discussed with her being a heroin courier. She says on page 324 and 329 of the transcript, she says, I said maybe I should give it a try, I really want this money, and she says, I said fine, and these are conversations with Oulay, not with Omoa. I'd love to try it, she says, I'd love to get drugs and bring them here, and in furtherance of that conspiracy, he introduced her to Omoa, and expecting that she would bring drugs in, and I think it's worth noting that in the first conspiracy, the people who had introduced Oulay, who filled the role of a courier, that was Yankson and Ebenezer Barnes, were paid by the organization, so the jury could certainly find that there was an agreement between Oulay and Byron Medici, Julian, and that Oulay expected to get some payment from Omoa for introducing her. Thank you. Judge, just if I may on the procedural reasonableness of sentencing, of course our argument is that, primary argument is that this is waived because of the safety of Al Proffer and the letter in our addendum. I would just add on the weight, just so the record is clear. So we have at least two kilograms based on the 2010 conspiracy, and then with respect to the trip to California, what actually happened there was that Mr. Oulay agreed to go out to California, and this was through the testimony of Mr. Omoa and Agent Park at trial. Mr. Oulay agreed to go out to California to get what he thought was three kilograms of heroin. He could not fly because he was on probation, and he suggested that he would drive out there and back, and the FBI decided for operational reasons to have Omoa suggest a closer trip. I've seen that several times. What is operational? Your Honor, it was going to be difficult for them to surveil him driving across the country and back in a car as opposed to having him get on a plane. They don't have helicopters where they can fly alone. No, Your Honor. There are no remaining questions. We'll rest on our brief. Thank you. Thank you. Thank you. Your Honor, if the Court has any questions, I'll address them. If not, I'll address them briefly. Thank you. Thank you both for your arguments. The Court will reserve decision. The Clerk will adjourn Court. The Court stands adjourned. Thank you.